IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BONNIE J. KEITH, )
 )
       Plaintiff, )
 )
v. )
 ) Civil Action No. 09-204J
MICHAEL J. ASTRUE, )
COMMISSIONER OF )
SOCIAL SECURITY, )
 )
       Defendant. )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 26th day of May, 2010, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 12) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry

differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed her application for SSI on April 1, 2006, alleging disability due to back problems, fibromyalgia, osteoarthritis, osteoporosis and a blockage in both legs. Plaintiff's application was denied. At plaintiff's request, an ALJ held a hearing on September 14, 2007, at which she appeared represented by counsel. On November 29, 2007, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on June 17, 2009, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff was 52 years old at the time of the ALJ's decision and is classified as a person closely approaching advanced age under the regulations. 20 C.F.R. §416.963(d). Plaintiff has a high school education, but she does not have any past relevant work experience.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing,

AO 72
(Rev. 8/82)

the ALJ concluded that plaintiff is not disabled within the meaning of the Act. Although the ALJ found that plaintiff suffers from the severe impairments of fibromyalgia, osteoarthritis, degenerative disc disease of the cervical spine and obesity, he concluded those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ found that plaintiff retains the residual functional capacity to perform a range of light work with a number of other limitations. Plaintiff requires a sit/stand option and must be permitted to take four or five steps away from her work station during a one-minute period up to five times an hour. She is precluded from crawling and climbing on ladders, ropes and scaffolds, she is limited to occasional overhead work with her head tilted back, and she must avoid overhead reaching, as well as pushing and pulling with the upper extremities. In addition, plaintiff must avoid prolonged exposure to cold temperature extremes and extreme wetness or humidity. Finally, plaintiff is limited to occupations that do not involve working around unprotected heights (collectively, the "RFC Finding").

The ALJ then relied upon the vocational expert's testimony in concluding that plaintiff's age, educational background and residual functional capacity enable her to perform work that exists in significant numbers in the national economy, such as a recreation aide, garment sorter, addresser or surveillance system

AO 72
(Rev. 8/82)

- 3 -

monitor. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

To regularize the adjudicative process, the Commissioner has promulgated regulations that govern the evaluation of disability. 20 C.F.R. §§416.901-.998. The process is sequential and follows a "set order" of inquiries. 20 C.F.R. §416.920(a)(4). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of her age, education, work experience and residual functional capacity. Id.; see also Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §416.920(a)(4).

In this case, plaintiff challenges the ALJ's findings at steps 2 and 5 of the sequential evaluation process. Plaintiff argues at step 2 that the ALJ erred in finding that certain of her claimed impairments are not severe. In addition, plaintiff contends the ALJ's step 5 finding that she retains the residual functional capacity to perform work that exists in the national economy is not supported by substantial evidence. The court disagrees with plaintiff's arguments.

Plaintiff first argues that the ALJ erred in finding that her left shoulder impairment and her bilateral lower extremity blockages are not severe impairments. The "severity regulation" applied at step 2 requires that the claimant have a severe impairment, or combination of impairments, which significantly limits her physical or mental ability to perform basic work activities.[1] 20 C.F.R. §416.920(c). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step 2 severity determination in terms of what is "not severe." <u>Newell v. Commissioner of Social Security</u>, 347 F.3d 541, 546 (3d Cir. 2003) (citing <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996)). According to the Regulations, an impairment "is

---

[1] Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§416.921(b)(1)-(6).

not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §416.921(a). Social Security Ruling 85-28 clarifies that an impairment can be found "not severe" only if the evidence establishes a slight abnormality which has no more than a minimal effect on an individual's ability to work.

Although the principles discussed above indicate that the burden on an applicant at step 2 is not an exacting one, plaintiff nonetheless bears the burden to prove that her claimed impairments are severe. 20 C.F.R. §416.912(c); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (stating that the claimant bears the burden of proof at step 2 of the sequential evaluation process). Plaintiff has not met that burden in this case, as she has not proffered evidence to establish that her left shoulder impairment and her bilateral lower extremity blockages present more than a minimal impact on her ability to perform basic work activities.

With respect to plaintiff's left shoulder impairment, Dr. Raymond Bleday diagnosed her with impingement syndrome/rotator cuff tendinitis and acromioclavicular joint arthrosis. (R. 342). Despite this diagnosis, Dr. Bleday stated in his treatment notes that plaintiff had full range of motion with overhead, behind the head and behind the back movements, and she did not have any muscle atrophy in the left shoulder. (R. 342, 351, 355, 357). Dr. Bleday did not identify any limitations related to plaintiff's left shoulder, nor did he restrict her activities in any way. To the contrary, Dr. Bleday repeatedly indicated in his treatment

AO 72
(Rev. 8/82)

notes that plaintiff could work as tolerated. (R. 342, 344, 345, 352, 356, 357). As a result, the ALJ correctly determined that plaintiff's left shoulder impairment is not severe.[2] (R. 15-16).

The ALJ likewise correctly found that plaintiff's bilateral lower extremity blockages are not severe. A Doppler imaging study showed that plaintiff had moderate arterial impairment in her right leg and mild impairment in her left leg. (R. 209). Plaintiff subsequently was diagnosed with bilateral lower extremity peripheral vascular disease. (R. 201). Plaintiff underwent an angiography of the aortoilliac and lower extremity and a stent was placed in her right mid superficial femoral artery. (R. 201). Following plaintiff's surgical procedure to correct the moderate blockage in her right leg, there is nothing in the evidence to indicate that she suffered any ongoing problems with peripheral vascular disease of either leg. Accordingly, the ALJ's step 2 analysis was proper with respect to plaintiff's bilateral lower extremity blockages.

Plaintiff next challenges the ALJ's findings at step 5 of the sequential evaluation process. At step 5, the Commissioner must show that there are other jobs that exist in significant numbers in the national economy which the claimant can perform consistent with her age, education, past work experience and residual

---

[2] Although the ALJ properly determined that plaintiff's left shoulder impairment is not severe, the court notes that the ALJ accommodated any functional limitations plaintiff alleges with respect to her left shoulder because his RFC Finding restricts plaintiff from performing work that involves overhead reaching, as well as pushing and pulling with the upper extremities.

functional capacity. 20 C.F.R. §416.920(g)(1). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments. 20 C.F.R. §416.945(a)(1); Fargnoli, 247 F.3d at 40. In assessing a claimant's residual functional capacity, the ALJ considers the claimant's ability to meet the physical, mental and other sensory requirements of work. 20 C.F.R. §416.945(a)(4).

Here, plaintiff argues that the ALJ erred at step 5 because: (1) he did not give appropriate weight to the opinion of her treating physician; and (2) his hypothetical question to the vocational expert did not account for all of plaintiff's limitations. The court finds that these arguments lack merit for the reasons explained below.

Plaintiff first contends that the ALJ erred by giving inadequate weight to the opinion of her treating physician, Dr. Joseph Sabo. A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other evidence of record. 20 C.F.R. §416.927(d)(2). Under this standard, Dr. Sabo's opinion was not entitled to controlling weight.

Dr. Sabo completed two forms entitled "Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities" on which he rated plaintiff as being so significantly limited in her ability to perform virtually all physical functions, including standing, walking, sitting and other postural

maneuvers, that she would be unable to work an eight hour day. (R. 233-34, 450-51). Despite Dr. Sabo's opinion that plaintiff was so limited, he did not provide any objective findings to substantiate the significant limitations he identified on the form reports. In addition, Dr. Sabo's opinion of plaintiff's significant limitations is further contradicted by his own treatment notes, which documented only minimal objective findings during his examinations of plaintiff. Finally, Dr. Sabo's opinion is inconsistent with Dr. Bleday's examination findings regarding plaintiff's cervical disc disease and his opinion that plaintiff could work as tolerated, (R. 351-52, 355-56, 357), as well as the findings of Dr. Duree Ahmed, a consultative examiner, who determined that plaintiff had normal range of motion in the spine, shoulder, wrist, hip, knee and ankle, good strength and tone, no atrophy, stable gait, and normal reflexes and coordination. (R. 313). For these reasons, the ALJ properly concluded that Dr. Sabo's opinion was not entitled to controlling weight.

Plaintiff's final argument is that the ALJ's hypothetical question to the vocational expert did not account for any limitations allegedly caused by her left shoulder impairment and bilateral lower extremity impairment.

An ALJ's hypothetical question to a vocational expert must reflect all of the claimant's impairments and limitations supported by the medical evidence. <u>Chrupcala v. Heckler</u>, 829 F.2d 1269, 1276 (3d Cir. 1987). Here, the ALJ's hypothetical incorporated all of plaintiff's functional limitations that the

evidence of record supported, including all of the factors that were the basis of the RFC Finding. As discussed above, the ALJ correctly determined that plaintiff's left shoulder impairment and bilateral lower extremity impairment were not severe, thus he was not required to account for any functional limitations that plaintiff alleges in connection with those impairments. Accordingly, the ALJ did not err in relying on the vocational expert's testimony to conclude that plaintiff can perform other work that exists in the national economy.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Therefore, the decision of the Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Stanley E. Hilton, Esq.
801 Jonnet Building
Monroeville, PA 15146

John J. Valkovci, Jr.
Assistant U.S. Attorney
319 Washington Street
Room 224, Penn Traffic Building
Johnstown, PA 15901